# NON-RECOURSE LOAN AGREEMENT INCLUDING STOCK SECURITY DELIVERY AND RE-DELIVERY AGREEMENT

This Agreement made and entered into this 11th day of, October 2006 by and between Rainmaker International, Inc. (the "Grantor"), and Capital Trust Holding. (collectively, the "Grantee") is as follows:

WHEREAS, the Grantee now owns securities of Boulder Steel Limited (the "Company") as listed below (the "Pledged Securities") and is willing to convey said securities to the Grantor to collateralize a non-recourse loan under the herein terms and conditions; and

WHEREAS, the Grantee is willing to comply with the herein contained terms and conditions for the delivery of the herein described securities;

NOW THEREFORE, in consideration of the herein contained recitations, the mutual covenants set forth herein, and other good and valuable consideration, the receipt of which is acknowledged, the parties agree as follows:

**1. Delivery of the Securities and Stock Powers.**

a. The Pledged Securities to be delivered by the Grantee to the Grantor, as collateral for the loan made hereunder is/are as follows:

Up to 40,000,000 freely-tradable and unencumbered shares of Boulder Steel Limited. (AUS (AX) : BGD) common stock to be funded in traunches of 500,000 shares each; each traunche to be priced separately and on receipt of groups of Pledges Shares per **Section 2** of this Agreement.

b. The Grantee shall deliver (the "Delivery Account") the Pledged Securities to:

| | |
|---|---|
| Firm: | First Clearing Corporation / Fordham Financial Services |
| Address: | 14 Wall Street - 18th Floor New York, New York 10005 |
| DTC Number | 0141 |
| FBO: | Rainmaker International, Inc. |
| Account Number | 1169-5144 |

RI Initial_____                                    Grantee Initial_____

c. The Grantee authorizes the Grantor, at its discretion, to sell and trade the Pledged Securities or hold or place the Pledged Securities with:

(i) any domestic or foreign depository or clearing corporation or system that provides handling, clearing, safekeeping services;

(ii) the issuer of a security in non-certificate form; or

(iii) any foreign or domestic bank or depository sub-custodian.

d. The Grantee hereby agrees to execute the attached Irrevocable Stock and Bond Power marked "Exhibit A" in connection with the delivery of the Pledged Securities hereunder, when applicable.

e. At any point in time, the Grantor shall not be entitled to receive stock if such issuance would result in beneficial ownership by the Grantor and its affiliates of more than 4.99% of the outstanding shares of common stock of the Company on such issue date, including:

(i) the number of shares of common stock beneficially owned by the Grantor and its affiliates, and

(ii) the number of shares of common stock issuable upon the exercise or conversion of any Pledged Securities owned.
(For the purposes of this provision as set forth in the immediately preceding sentence, "beneficial ownership" shall be determined in accordance with Section 13(d) of the Securities Exchange Act of 1934, as amended, and Regulation 13d-3 thereunder. Subject to the foregoing, the Grantor shall not be limited to aggregate common stock issuances of only 4.99% and aggregate common stock issuances may exceed 4.99%. The Grantor may void the issuance limitation described in this Section upon 61 days prior written notice to Boulder Steel LTD. The Grantor may allocate which of the equity of the Pledged Securities deemed beneficially owned by the Grantor shall be included in the 4.99% amount described above and which shall be allocated to the excess above 4.99%.)

2. Amount and Term of Loan.
a. The gross amount of a loan to be made pursuant to this Agreement (the "Loan") shall be calculated by multiplying the number of Pledged Securities transferred to the Grantor by 65% of the lesser of:

(i) $0.392; or

(ii) the Closing bid price on the day prior to the Closing; or

RI Initial_____                                    Grantee Initial_____

(iii) the Average bid price for the 10 days immediately prior to the Closing.

b. Consequently, the gross loan-to-value for this transaction shall be 65% (percent), with 5% of the gross loan amount to cover the placement/origination fee.

c. Subject to the terms and conditions hereunder, the Grantor shall make a Nonrecourse loan to the Grantee in the amount of approximately US $192,000.00 based upon receipt of collateral in the amount of 500,000 Pledged Shares; *provided, however,*

(i) that the final loan amount will not be fully determinable until after the 40,000,000 shares of Pledged Securities posts to the Grantor's brokerage/delivery account.

d. The Term of the loan to be made by the Grantor to the Grantee pursuant to this Agreement shall terminate on the 36 month anniversary of the date of this Agreement, with a one year prepayment lockout; and a 9% (nine) pre-payment penalty in year 2 (two) and a 5% (five) pre-payment penalty in the third year.

e. If mutually agreed upon by the Grantor and the Grantee, this loan can be extended for an additional 12 months with the same terms and conditions as set forth herein. In any event the maximum term of this loan shall be three years, plus one month.

f. Transmission of funds pursuant to the terms herein (the "Closing"), shall occur within 5 business days of the posting of the Pledged Securities to the Delivery Account. For purposes of this Agreement, if the Pledged Securities are received by the Grantor after 12:00 noon on a particular day, at the Grantor's option, it may be considered as having been received on the next succeeding business day.

g. Loan proceeds shall be wired to:

| | |
|---|---|
| Bank Name: | Bank of New York |
| ABA Number: | 0021-000018 |
| Acct Name: | Pershing LLC |
| FCO: | 8900512385CapitalTrust Holding |

**3. Interest, Fees and Payments.**

a. The loan shall have an interest rate in an amount equal to 7.25% annually and shall be payable to the Grantor quarterly. The first interest payment shall be due on the first banking day of the 3rd month following Closing. All subsequent payments *(except otherwise noted herein)* shall be due on the first banking day of each 3rd month thereafter for the term of this Loan Agreement.

RI Initial_____                                                    Grantee Initial_____

b. In the event that the Grantee does not make said payment by the 10th day after the due date of the months herein named or otherwise breaches this Agreement, the Agreement will terminate at the option of the Grantor, and the Grantor may take whole possession and full unrestricted ownership of the Pledged Securities.

### 4. RE-DELIVERY OF THE PLEDGED SECURITIES

a. Provided that the Grantee is then in compliance with this Loan Agreement, the Grantor agrees on the last day of the term, or earlier in the event of prepayment of this Agreement (the "Re-Delivery Date"), to return the Pledged Securities to the Grantee within 15 banking days of loan repayment to the Grantor; *provided, however,* that

(i) the Grantee shall have the option to renew this Agreement for an additional 12 month term if the Grantor is in agreement, in which case, the Grantor must receive written notice of the request within ten (10) banking days prior to the expiration of this loan, and there will be no fees charged for this extension.

b. The Grantor agrees that it will not deal with the Pledged Securities in any fashion that would prevent or delay the return and re-delivery of all of the Pledged Securities to the Grantee immediately upon repayment of the amount due under the Loan Agreement.

c. If, at any time during the loan term (defined as the time period immediately following Closing and immediately preceding the repayment of the full loan amount), the value of the Pledged Securities should decrease in value by more than 100% of the aggregate valuation as calculated per the loan contract herein, then the Grantee shall immediately enter into Default, and immediate and full repayment of the loan shall be due. If the Grantee is unable to repay the full loan amount within 10 calendar days of the loan entering into Default, then the Default status shall become permanent and irrevocable.

d. All dividends from the pledged securities shall be received and retained by the Lender, as further compensation for the execution of the Loan. Collection of these dividend payments will not off set Interest payments due from the Grantee.

e. In the event of the Grantee repaying the entire loan amount as specified in the contract herein, and if the value of the securities upon repayment is in excess of 140% of the value of the pledged securities as calculated on day of loan closing per loan contract herein, then the Grantor shall be obligated to return to the Grantee 140% of the value of the pledged securities in cash or in stock.

RI Initial_____                                    Grantee Initial_____

## 5. CONDITIONS, RESTRICTIONS, AND FURTHER AGREEMENTS

a. In addition to this Agreement, the Grantee agrees to execute and sign all related loan documents as requested by the Grantor and an assignment in the event of any default of any terms or conditions of loan repayment.

b. If the Grantee defaults on any terms and conditions set forth in this Agreement, then the Grantee will have no further rights, claims or interest in the Pledged Securities.

c. The Grantee represents and warrants

(i) that the Pledged Securities are duly owned by the Grantee;

(ii) that the Pledged Securities do not contain a restrictive legend;

(iii) that there are no liens against the Pledged Shares; and

(iv) that the Pledged Securities are freely tradable.

d. The Grantee further warrants that all statements and associated documentation provided in connection with the application for said loan are true and complete and do not omit any facts or information material to the evaluation of the loan request, and that loan proceeds will not be used to purchase margin stock per any Regulation of the Federal Reserve Board of the United States.

e. Neither the Grantor nor any affiliate, directly or indirectly, shall sell short any interest or shares of BGD Stock during the term of this Agreement, nor shall the Grantor, or any affiliate directly or indirectly, attempt to induce any person to sell short any interest or shares of BGD Stock.

(For purposes of this Agreement, to "sell short" shall mean selling any interest or shares of a security which the seller does not have and to which the seller does not have a right.)

f. The Grantor may exercise and enforce all of the other rights, powers and remedies of the holder and owner of the Collateral and the liens, if any, securing the payment thereof, including *(but not by way of limitation)* the right to buy, sell or hypothecate such collateral, to the extent permitted under applicable securities laws.

## 6. NOTICES

Any notice from the Grantor to the Grantee, or from the Grantee to the Grantor, shall be deemed served upon delivery by registered mail, return receipt requested, addressed as follows:

RI Initial_____                                        Grantee Initial_____

The Grantor:                                    The Grantee:

**Rainmaker International, Inc.**               **Capital Trust Holding**
Two East Bryan Street                           Industries Trasse 12
Suite 502 Bug,                                  Switzerland 6304
Savannah, Georgia 31401

## 7. CONFIDENTIALITY

a. This Agreement will be maintained confidential and will not be reproduced in any manner whatsoever to any parties not mentioned herein.

b. Each side agrees not to circumvent the legitimate interest of the other, and to maintain strict confidentiality regarding the transaction.

c. Each side shall maintain confidentiality of trade secrets, techniques, and contacts of the other party.

d. There shall be no unauthorized communications of any kind (i.e., telephone calls, written inquiries, etc.) with banks, insurance companies, or contacts of the parties.

## 8. MISCELLANEOUS

**a. Statute of Limitation.** The Grantee expressly waives the pleading of any statute of limitations as a defense to any demand against the Grantee hereunder.

**b. Usury.** The Grantee expressly waives all defenses he may have or could interpose with respect to usury in any action relating to this Agreement or any Loans made hereunder.

**c. Governing Law; Jurisdiction; Arbitration.**

(i) This Agreement shall be interpreted, construed and enforced according to the laws of the state of Georgia, without regard to the conflicts of law rules or principles, except as required by mandatory provisions of law and except to the extent that the validity or perfection and the effect of perfection or non-perfection or priority of the security interest created hereby, or remedies hereunder, in respect of any particular collateral are governed by the law of a jurisdiction other than the state of Georgia.

(ii) The Parties hereto irrevocably agree and consent that all disputes concerning this Agreement or any claim or issue of any nature whatsoever arising from or relating to this Agreement or to the corporate steps taken to enter into it (including, without limitation, claims for alleged fraud, breach of fiduciary duty,

RI Initial_____                              Grantee Initial_____

breach of contract, tort, etc.) which cannot be resolved within reasonable time through discussions between the Parties, shall be resolved solely and exclusively by means of arbitration to be conducted in Savannah, Georgia, which arbitration will proceed in accordance with the rules of the Arbitration then in force in Savannah, Georgia, for resolution of commercial disputes.

(iii) The Parties agree that Arbitrators themselves shall have the right to determine and to arbitrate the threshold issue of arbitrability itself, that the decision of the Arbitrators shall be final, conclusive, and binding upon the Parties,

and that a judgment upon the award may be obtained and entered in any federal or state court of competent jurisdiction.

(iv) In addition, the Parties waive, to the maximum extent permitted by law, any objection, including any objection based on *forum non conveniens*, to the bringing of any such proceeding in such forum.

**d. WAIVER OF JURY TRIAL.** THE GRANTEE, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS AGREEMENT, ANY CONDUCT, ACT OR OMISSION OF SECURED PARTY OR ANY OF ITS EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS ASSOCIATED WITH THE SECURED PARTY OR THE GRANTEE, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

**e. The Grantor's Rights Cumulative.** The rights and remedies of the Grantor described herein are cumulative and are not alternative to or exclusive of any other rights or remedies which the Grantor otherwise may have by contract, at law or in equity.

**f. No Waiver by the Grantor.** No failure or delay on the part of the Grantor in exercising any right, power or privilege under this Agreement shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise of any other right, power or privilege. No modification or waiver of any provision of this Agreement, nor consent to any departure therefrom, shall in any event be effective unless the same shall be in writing and signed by the party against whom enforcement of such modification, waiver or consent is sought, and expressly refers to this Agreement and states that it is a modification, waiver or consent (as the case may be). Any such modification, waiver or consent shall be effective only in the specific instance and for the purpose for which given. In no case shall any notice or demand to the Grantee entitle him to any other or further notice or demand in the same, similar or other circumstances.

RI Initial_____                                                  Grantee Initial_____

**g. Survival**. All covenants, agreements, representations and warranties made in this Agreement shall survive the making of any Loan, and shall continue in full force and effect so long as any amount due under the Note remains unpaid.

**h. Severability**. If any one or more of the provisions contained in this Agreement, or any Loan made hereunder, should be invalid, illegal or unenforceable in any respect, it shall be severed herefrom or therefrom, and the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected or impaired thereby.

**i. No Third Party Beneficiaries**. No rights are intended to be created under this Agreement for the benefit of any third party donee, creditor or incidental beneficiary.

**j. Counterparts**. This Agreement may be executed in counterparts, each of which shall constitute an original, but both of which, taken together, shall constitute but one instrument.

**k. Headings**. Titles of articles and sections are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provisions hereof.

**l. Time of the Essence**. Time is of the essence with respect to all provisions of this Agreement.

**m. Entire Agreement**. This Agreement and all document pertaining thereto contain the entire agreement between the parties relating to the subject matter hereof and thereof, and all prior agreements relative hereto and thereto which are not contained herein or therein are hereby terminated. The Grantee acknowledges and agrees that he has consulted with counsel in the negotiation hereof and thereof and is not relying on the Grantor's counsel.

**n. Successors and Assigns**. The terms and provisions hereof shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, legal representatives, successors, successors-in-title and assigns, whether by voluntary action of the parties or by operation of law.

RI Initial_____          Grantee Initial_____

12.10.2006

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respected Officers, thereunto duly authorized as of the date first above written.

GRANTOR:  
Rainmaker International,

GRANTEE:  
Inc. Capital Trust Holding

Zug, 12.10.2006

By: _____  
    Morgan J. Wilbur III  
    Managing Director

By: _____  
    Hany Salem

**THIS AGREEMENT ENDS HERE**

RI Initial_____

Grantee Initial_____

12.10.2006